**Oral Argument Not Yet Scheduled**
**No. 26-5045**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA**

---

JOSÉ ESCOBAR MOLINA, *et al.*,

*Plaintiffs – Appellants,*

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants – Appellees*.

---

On Appeal from the United States District Court
for the District of Columbia, Case No. 1:25-cv-03417

---

# BRIEF OF *AMICUS CURIAE* FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-APPELLANTS

---


MATT A. CRAPO
LESLIE C. CORBLY
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 328-7004
mcrapo@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Federation for American Immigration Reform.

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ............ ii

GLOSSARY ............ iii

INTEREST OF *AMICUS CURIAE* ............ 1

SUMMARY OF ARGUMENT ............ 1

ARGUMENT ............ 2

I. Probable cause determinations are not amenable to injunctive orders ...... 2

II. The public interest favors the swift arrest and adjudication of immigration violations ............ 7

CONCLUSION ............ 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Biden*,
31 F.4th 469 (6th Cir. 2022) .......... 8

*Au Yi Lau v. INS,*
445 F.2d 217 (D.C. Cir. 1971) .......... 4

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) .......... 4

*Fiallo v. Bell*,
430 U.S. 787 (1977) .......... 8

*Illinois v. Gates*,
462 U.S. 213 (1983) .......... 4

*Morales v. Chadbourne*,
793 F.3d 208 (1st Cir. 2015) .......... 4

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 7

*United States v. Khan*,
324 F. Supp. 2d 1177 (D. Colo. 2004) .......... 5

*United States v. Pacheco-Alvarez*,
227 F. Supp. 3d 863 (S.D. Ohio 2016) .......... 5

*United States v. Quintana*,
623 F.3d 1237 (8th Cir. 2010) .......... 4

*United States v. Ron Pair Enters., Inc.,*
489 U.S. 235 (1989) .......... 3

## STATUTE

8 U.S.C. § 1357(a)(2) .......... 2

## GLOSSARY

| | |
|---|---|
| FAIR | Federation for American Immigration Reform |
| ICE | Immigration and Customs Enforcement |
| Dkt. | Docket |

## INTEREST OF *AMICI CURIAE*

*Amicus curiae* Federation for American Immigration Reform[1] ("FAIR") is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. In pursuit of this mission, FAIR regularly participates in litigation to defend lawful immigration enforcement policies and practices and to protect the rights and benefits of United States citizens.

## SUMMARY OF ARGUMENT

Congress has authorized Immigration Customs Enforcement ("ICE") to engage in warrantless arrests if the officer has reason to believe that the alien is in the United States in violation of law and is likely to escape before a warrant can be obtained for his arrest. The Director of ICE, Todd Lyons, issued a memorandum ("Lyons Memo") providing guidance to ICE officers on how to make warrantless arrests in compliance with this authority. In order to make a warrantless arrest, an ICE officer must have probable cause. Although such probable cause determinations turn on the assessment of probabilities in particular factual contexts

---

[1] Both parties consent to the filing of this *amicus* brief. Counsel for *amicus* authored this brief in whole, no party's counsel authored this brief in whole or in part, and no person or entity—other than *amicus*, its members, or its counsel—contributed monetarily to its preparation or submission.

and cannot be reduced to a neat set of legal rules, the district court attempted to do just that—require ICE officers to develop and consider information relating to an alien's community ties before making such a warrantless arrest. The district court further prohibited ICE officers from relying on the Lyons Memo simply because the Lyons Memo did not include consideration of "community ties" in its non-exhaustive list of factors to consider. This was error and should be reversed.

In addition, the public interest in prompt and rigorous enforcement of immigration law is hindered by the district court's injunctive order. The district court's order attempting to micromanage ICE's actions within the District infringes upon the long-standing principle that immigration enforcement is largely immune from judicial control. Accordingly, this Court should reverse and vacate the injunctive orders below.

## ARGUMENT

### I. Probable cause determinations are not amenable to injunctive orders.

Pursuant to 8 U.S.C. § 1357(a)(2), federal immigration officers may, without a warrant, arrest aliens if (1) there is "reason to believe that the alien" is in the United States in violation of immigration law, and (2) the alien "is likely to escape before a warrant can be obtained for his arrest." The government's approach to implementing § 1357(a)(2) faithfully adheres to the statutory language. A well-established rule of statutory interpretation is that "[t]he plain meaning of legislation

should be conclusive." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242 (1989). Exceptions exist only in rare cases where "the literal interpretation of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* (quotation omitted).

The Lyons Memo relies on a plain reading of the statute. Because the phrase "likely to escape" is not statutorily defined, the Lyons Memo instructs ICE personnel to make such determinations based on whether the arrestee "is likely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained." Dkt. 82-1 at 4 (page 3 of the Memo). Both parties and the district court agreed that this statement of the law is correct. Appellants' Brief at 63 ("All agree that the Lyons Memo sets forth the correct definition of 'likely to escape.'"); Dkt. 102 at 22. Because immigration officers must make complex judgment calls in the field, the Memo includes some, but not all, of the factors officers should consider when analyzing escape risk, including an arrestee's behavior during the encounter, ability to depart the scene of the encounter, possession of required documents, and so on. Dkt. 82-1 at 4-5 (pages 3-4 of the Memo). Thus, the Lyons Memo comports with the plain meaning of the word escape, which indicates "immediacy," and "to get away (as by flight)." *Id.* at 4 (page 3 of the Memo).

Because the Fourth Amendment applies to arrests involving aliens, the phrase "reason to believe" in §1357 is "equivalent to probable cause." *Au Yi Lau v. INS*, 445 F.2d 217, 222 (D.C. Cir. 1971); *see also, Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015); *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). And because probable cause deals with probabilities based on a totality of factual circumstances, determining probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quotation omitted). Probable cause determinations, moreover, "turn on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Yet the district court attempted such a reduction in crafting its preliminary injunction order. And in doing so, the district court erred by interpreting the statutory language "likely to escape" as likelihood to abscond, reading into the statute a requirement that ICE run a full analysis of an immigrant's community ties before being able to lawfully conduct a warrantless arrest. This is reflected in the requirements created by the court's order, which include, *inter alia*, the following:

(1) documentation of the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form;
(2) the location of the arrest and whether this location was a place of business, residence, vehicle, or a public area;
(3) the alien's ties to the community, if known at the time of arrest, including family, home, or employment;

(4) in describing the individualized assessment of escape risk in the documentation ordered above, specific details as to the person being arrested must be provided such that the use of boilerplate language may be deemed indicative of noncompliance.

*See* Dkt. 67 at 2-3.[2]

In support of its interpretation, the district court relied on nonbinding precedent from the Sixth and Tenth circuits. First, the court cited, *inter alia*, *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016), which ruled that likelihood of escape was not established where the defendant had a stable job, lived with his fiancée, and helped pay her rent and raise her two children. Dkt. 68 at 31. Additionally, the court cited *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004), which held that the likelihood of escape was not established where defendant worked two jobs, owned a vehicle, paid rent, and never experienced legal trouble before his immigration arrest. Dkt. 68 at 31. But these determinations of probable cause did not turn exclusively upon the extent of community ties, which is just one of many factors that may be considered.

In any event, the district court's conflation of "escape" and "abscond" shows why community ties are not dispositive and not very significant in probable cause

[2] The district court pulled these requirements from a now outdated Department of Homeland Security's "Broadcast Statement of Policy," which the government correctly asserts is improper because the Policy was implemented in connection with the settlement of a separate matter, *Castañon Nava v. DHS,* No. 18-cv-03757 (N.D. Ill.), that expired on June 11, 2025. *See* Appellant Br. 6. Moreover, that Policy was subsequently replaced by the Lyons Memo.

determinations. An alien with community ties may still flee the immediate area of arrest, and avoid other clearly-defined areas known to ICE, even if he does not abscond from the community to which he has ties. He may be more than willing, and able, to hide from ICE without leaving this community.

Merely because the Lyons memo failed to specifically require consideration of community ties in its non-exhaustive list of factors to consider, the district court ruled that the Memo violated its injunctive order. Dkt. 102 at 25-29. But the Lyons Memo distinguished between the likelihood of escape and the risk of flight, Dkt 82-1 at 5-6 (pages 4-5 of the Memo), and recognized that "on-the-spot determination as to the likelihood of escape is often made with limited information about the subject's identity, background, or place of residence and no corroboration of any self-serving statements made by the subject." Dkt. 82-1 at 6 (page 5 of the Memo). Instead of engaging in statutory analysis focused on "escape," the district court conflated escape with flight risk and focused on whether community ties suggest that the alien is not a flight risk and required Defendants to comply with this non-statutory understanding of "escape." Notably, the district court recognized that probable cause determinations require consideration of the totality of the circumstances and expressed appreciation for the challenges in identifying a comprehensive set of factors to be considered by regulation. Dkt. 102 at 30, n.14.

Because the preliminary injunction impermissibly requires ICE officers to consider an "alien's ties to the community," Dkt. 67 at 3, where such a consideration is not and cannot be determinative of probable cause in every circumstance, the district court erred. Requiring ICE officers to develop and consider information regarding community ties is incompatible with the individualized probable-cause inquiry.

## II. The public interest favors the swift arrest and adjudication of immigration violations.

The public interest weighs against Plaintiffs. The public interest is supported by the robust enforcement of immigration laws without unnecessary judicial involvement that hinders or prevents such enforcement. For example, in *Nken v. Holder* the Court held there is a public interest in the "prompt execution of removal orders" and that the continued presence of removable aliens "undermines the streamlined removal proceedings" established by law. *Nken v. Holder*, 556 U.S. 418, 436 (2009).

The public's interest in robust enforcement of federal immigration laws supports the government's interpretation of § 1357(a)(2) and runs contrary to the district court's analysis of the phrase "likely to escape." Requiring the government to believe an unlawfully present alien may abscond—rather than effectively avoid arrest—before making a warrantless arrest imposes a requirement not outlined in statute and hinders the prompt enforcement of immigration laws.

Indeed, the district court's decision to prohibit reliance on the Lyons Memo reveals the underlying problem with granting Plaintiff's request for injunctive relief. Because the district court granted Plaintiffs injunctive relief on a flawed analysis of § 1357(a)(2), the rational next step for Plaintiffs is to seek continued court monitoring of the enforcement of federal law. As the government observed, Plaintiffs are now incentivized to seek "training materials, object to the training materials, litigate their objections to the materials before the Court, and observe the trainings for themselves." Dkt. 82 at 14. This encourages further litigation of the minutia of federal law enforcement, including what factors are sufficient to establish probable cause and escape risk, inviting the district court to micromanage enforcement and make routine rulings on issues where reasonable minds can differ.

The district court's flawed injunctive order also infringes upon longstanding principles that caution for judicial restraint when invited to micromanage immigration law, "where the federal Legislative and Executive Branches, not the Judicial Branch, are the key drivers of national policy." *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring); *see also Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." (quotations omitted).

## CONCLUSION

For the foregoing reasons, this Court should reverse and vacate the preliminary injunction and enforcement order.

Date: September 3, 2026

Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
LESLIE C. CORBLY
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 328-7004
mcrapo@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 27(d)(2) because it contains 1,941 words, as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

Date: September 3, 2026

Respectfully submitted,

/s/ Matt Crapo

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September 2026, I electronically filed the foregoing *amicus* brief with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the parties' counsel.

s/ Matt Crapo