ORAL ARGUMENT NOT YET SCHEDULED

**Case No. 26-5045**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

JOSÉ ESCOBAR MOLINA, *et al.*,

*Plaintiffs-Appellees,*

*v.*

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-03417

# BRIEF OF *AMICUS CURIAE* LAWYERS DEFENDING AMERICAN DEMOCRACY IN SUPPORT OF APPELLEES URGING AFFIRMANCE

Michael D. Bergman
*Counsel for Amicus Curiae*
LAWYERS DEFENDING
AMERICAN DEMOCRACY
P.O. Box 1922
Framingham, MA 01701
(301) 908-5035
mdbergman1@gmail.com

# CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW AND RELATED CASES

## A. Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief for Appellees.

## B. Ruling under Review

References to the ruling at issue appear in the Brief for Appellees.

## C. Related Cases

This case has not previously been before this Court or any court other than the district court. Other related pending cases within the meaning of D.C. Circuit Rule 28(a)(1)(C) are listed in the Brief for Appellees.

Dated: October 14, 2026

/s/ *Michael D. Bergman*
Michael D. Bergman

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, 29(a)(4)(A) and D.C. Circuit Rule 26.1, *amicus curiae* Lawyers Defending American Democracy (LDAD) states it is a non-partisan, tax-exempt 501(c)(3) organization. LDAD is not owned by any parent corporation and no publicly held corporation has 10% or more ownership.

Dated: October 14, 2026

/s/ Michael *D. Bergman*
Michael D. Bergman

## CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for amicus curiae Lawyers Defending American Democracy states that he is not aware of any other amicus brief supporting Appellees. To the extent others are filed, a separate brief is necessary because this brief addresses only CASA, Inc.'s organizational standing in detail, which the district court did not reach.

Dated: October 14, 2026

/s/ *Michael D. Bergman*
Michael D. Bergman

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW AND RELATED CASES .......... i

CORPORATE DISCLOSURE STATEMENT .......... ii

CERTIFICATE REGARDING SEPARATE BRIEFING .......... iii

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES .......... vi

GLOSSARY OF ABBREVIATIONS .......... viii

STATEMENT OF IDENTITY, INTEREST, AND AUTHORIZATION .......... ix

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS .......... xi

SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

CASA, INC. HAS ORGANIZATIONAL STANDING .......... 3

A. General Legal Standards for Standing to Sue .......... 3

B. Defendants' Unlawful Arrest Policy Has Caused a Concrete Injury to CASA, Inc. Based on Governing Organizational Standing Law Because It "Directly Affect[s] and Interfere[s] with" CASA, Inc.'s "Core Business Activities" and Because CASA, Inc.'s Injury Arises in the Same "Context" as *Havens* .......... 4

1. CASA, Inc. Satisfies *Alliance for Hippocratic Medicine*'s "Core Business Activities" Standard as This Court Recently Applied It in *Center for Taxpayer Rights*. .......... 5

2. CASA, Inc.'s Injury Falls Within the "Context" in Which *Alliance for Hippocratic Medicine* Reaffirmed *Havens*. .................... 13

CONCLUSION .................... 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES*

**Cases** Page(s)

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615 (D.C. Cir. 2020) .......... 6, 9

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 3

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 144 F.4th 296 (D.C. Cir. 2025) .......... 6

**Ctr. for Taxpayer Rts. v. IRS*, No. 26-5006, — F.4th —, 2026 WL 2635380 (D.C. Cir. Sept. 8, 2026) .......... 1, 2, 4–12, 18

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .......... 11

*Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1 (D.D.C. 2025) .......... 5, 17, 19

**FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .......... 1–7, 9, 12–14, 16, 18, 19

*Haaland v. Brackeen*, 599 U.S. 255 (2023) .......... 3

**Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .......... 2–4, 6, 7, 13–17, 19

*Indep. Mkt. Monitor for PJM v. FERC*, 162 F.4th 1167 (D.C. Cir. 2025) .......... 14

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .......... 14

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015) .......... 14

*Spann v. Colonial Vill., Inc.*, 899 F.2d 24 (D.C. Cir. 1990) .......... 14

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .......... 3

* Authorities upon which we chiefly rely are marked with asterisks.

*Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014)...................... 5

**Constitutional Provisions**

U.S. Const. art. III.......................................................................... 3, 5

**Rules**

Fed. R. App. P. 26.1 ........................................................................ ii

Fed. R. App. P. 29(a)(2) ....................................................................x

Fed. R. App. P. 29(a)(4)(A) ............................................................. ii

Fed. R. App. P. 29(a)(4)(D) ............................................................. ix

Fed. R. App. P. 29(a)(4)(E) ............................................................. xi

D.C. Cir. R. 26.1 .............................................................................. ii

D.C. Cir. R. 28(a)(1)(C)..................................................................... i

D.C. Cir. R. 29(b) ........................................................................... xi

D.C. Cir. R. 29(d) ........................................................................... iii

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Decl. | Declaration |
| DHS | Department of Homeland Security |
| Dkt. | Docket entry in *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 25-cv-03417 (D.D.C.) |
| FERC | Federal Energy Regulatory Commission |
| HHS | Health and Human Services (CASA, Inc. program) |
| ICE | Immigration and Customs Enforcement |
| IRS | Internal Revenue Service |
| LDAD | Lawyers Defending American Democracy |

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORIZATION PURSUANT TO FED. R. APP. P. 29(a)(4)(D)

***Identity.*** Lawyers Defending American Democracy (LDAD) is a non-profit, non-partisan organization devoted to: encouraging the legal profession to enforce and uphold principles of American democracy and law, consistent with our obligations as lawyers; demanding accountability from lawyers and public officials; and identifying attacks on legal norms and prescribing redress for them. LDAD's mission is to defend the underlying constitutional values and norms of political behavior on which our democracy depends, including the rule of law, institutional checks and balances, separation of powers, press freedom, and the integrity of our system of justice.

***Interest.*** LDAD files this amicus brief because basic rule of law principles require that the government abide by the legal conditions for the deprivation of liberty effectuated by a warrantless civil arrest. While the district court did not reach CASA, Inc.'s claim of organizational standing because it found that CASA, Inc. had associational standing, we provide this brief in case this Court disagrees with that finding. Our brief provides a more detailed discussion of

CASA, Inc.'s basis for organizational standing to challenge the government's actions than Appellees can in their brief.

The law of standing establishes that an organization has standing to sue challenged conduct which "directly affect[s] and interfere[s] with" the organization's "core business activities," and the organization "diverted its resources" to continue pursuing those activities. Here, Plaintiff organization CASA, Inc., provided an unrebutted supporting declaration attesting that the essential legal and social service programs it provides its members to stabilize their legal status and ability to receive public benefits and services have been significantly impeded by Defendants' warrantless-arrest policy. That policy resulted in federal agents routinely detaining immigrants without an individualized determination of probable cause that they were likely to escape, which the district court found violated federal law. Because the policy has directly obstructed CASA, Inc.'s core activities and essential member services, CASA, Inc. suffered a concrete injury sufficient to confer standing to challenge the illegal detention program.

***Authorization.*** LDAD is authorized to file this brief pursuant to Fed. R. App. P. 29(a)(2) because all parties (through their counsel) have

consented to its filing. Further, LDAD is permitted to participate in this matter as amicus curiae under D.C. Circuit Rule 29(b) because all parties (through their counsel) have consented to its participation.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Pursuant to Fed. R. App. P. 29(a)(4)(E), amicus curiae Lawyers Defending American Democracy states that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

Plaintiff CASA, Inc. has established organizational standing on either of two alternative grounds based on the recent Supreme Court decision in *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).

**1.** First, *Alliance* made clear that an organization suffers a concrete injury sufficient to confer standing where a defendant "directly affect[s] and interfere[s] with" the organization's "core business activities." *Id*. This Court, applying *Alliance,* recently held that where the defendant's conduct obstructs an organization's core services, and forces it to "divert[] its resources" to continue pursuing those activities, that injury supports standing to sue. *Ctr. for Taxpayer Rts. v. IRS,* No. 26-5006, — F.4th —, 2026 WL 2635380, at *5 (D.C. Cir. Sept. 8, 2026).

In this case, the Plaintiff organization CASA, Inc. – whose purpose is to benefit "immigrant communities" by offering legal, social, health, and employment services – challenged Defendants' unlawful warrantless-arrest program, which it asserts has directly interfered with its critical member services. The district court held that the challenged conduct violated federal immigration law. CASA, Inc. demonstrated through its unrebutted supporting declaration that it has

organizational standing to challenge Defendants' policy because the arrests have "caused a significant disruption to [CASA, Inc.'s] functions and activities" by forcing it to redirect its efforts away from its core service work to providing "emergency" detention-related guidance to its members. The declaration also shows that the policy drained CASA, Inc.'s resources by increasing its staff's workload to provide "detention response" (work its budget does not fully fund), by raising its out-of-pocket costs for the hotline service that Defendants' arrests flooded, and by "jeopardiz[ing]" its financial support, as reflected in a substantial cut to a county grant caused by its delay in delivering core services under the grant. CASA, Inc. has thus demonstrated that Defendants' illegal detention policy impeded its "core business activities" sufficient to confer organizational standing under *Alliance* and *Center for Taxpayer Rights*.

**2.** Second, *Alliance* reaffirmed the principle in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982), that an organization suffers a "concrete and demonstrable injury" sufficient to confer standing where a defendant has "perceptibly impaired [its] ability to provide" services to its members – but limited that holding to its "context." *All. for*

*Hippocratic Med.*, 602 U.S. at 395–96. This case falls well within *Havens*' context because both cases involve defendants' interference with the plaintiff organization's direct-service programs.

## ARGUMENT

## CASA, INC. HAS ORGANIZATIONAL STANDING

### A. General Legal Standards for Standing to Sue

Like an individual, an organization has Article III standing to sue where it has "alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (cleaned up). Doing so requires showing an injury that is: (1) "concrete, particularized, and actual or imminent" and not "speculative"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Haaland v. Brackeen*, 599 U.S. 255, 291–92 (2023) (standing requires "an injury in fact that is fairly traceable to [Defendants'] allegedly unlawful conduct and likely to be redressed by the requested relief"). An organization suing on its own behalf must "satisfy the usual standards

for injury in fact, causation, and redressability." *All. for Hippocratic Med.*, 602 U.S. at 393–94 (quoting *Havens*, 455 U.S. at 379 n.19).

### B. Defendants' Unlawful Arrest Policy Has Caused a Concrete Injury to CASA, Inc. Based on Governing Organizational Standing Law Because It "Directly Affect[s] and Interfere[s] with" CASA, Inc.'s "Core Business Activities" and Because CASA, Inc.'s Injury Arises in the Same "Context" as *Havens*

CASA, Inc.'s injury satisfies *Alliance for Hippocratic Medicine* in two independent ways. First, CASA, Inc. satisfies *Alliance*'s "core business activities" standard as this Court applied it last month in *Center for Taxpayer Rights,* which sustained organizational standing on closely analogous facts. Second, *Alliance* described *Havens* as "an unusual case" and cautioned against extending its holding "beyond its context." 602 U.S. at 396. But that context – involving a defendant whose conduct directly obstructed a service organization's delivery of its services – is this one.

Both arguments rest on the same record. CASA, Inc. has shown, through its unrebutted supporting declaration, Dkt. 17-6 ("CASA, Inc. Decl."), that it has organizational standing to challenge Defendants' unlawful warrantless-arrest program, because the illegal arrests directly interfere with CASA, Inc.'s core programmatic activities and

the delivery of its principal services to its members. The district court did not reach organizational standing, resolving CASA, Inc.'s standing on associational grounds instead. *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30 (D.D.C. 2025). But the court recounted CASA, Inc.'s declaration describing those injuries, and it found the challenged arrest policy unlawful, *id.* at 49–50. Those findings confirm that CASA, Inc.'s injuries are directly traceable to Defendants' conduct. Defendants never contested CASA, Inc.'s organizational-standing facts or rebutted the declaration below, so that factual predicate stands unchallenged. *See id.* at 37 (treating as conceded associational-standing arguments that defendants failed to address) (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)). Although Article III standing itself cannot be waived or conceded, a party may forfeit factual challenges to the record, and CASA, Inc.'s unrebutted declaration is properly credited here.

### 1. CASA, Inc. Satisfies *Alliance for Hippocratic Medicine*'s "Core Business Activities" Standard as This Court Recently Applied It in *Center for Taxpayer Rights*.

In *Alliance*, the Supreme Court held that an organization suffers the requisite injury to confer standing where the defendant's conduct

"directly affect[s] and interfere[s] with" its "core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395. Further, "causation is shown where new activities, not previously part of the organization's 'normal annual expenditures,' 'became necessary' in response to the injury, causing a 'drain on the organization's resources.'" *Ctr. for Taxpayer Rts.*, 2026 WL 2635380, at *4 (quoting *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 619 (D.C. Cir. 2020) (quoting *Havens*, 455 U.S. at 379)).

*Alliance,* moreover, placed curbs on the scope of organizational standing. It held, for example, that an organization cannot "spend its way into standing" simply by expending resources to advocate against "the defendant's action" or to "oppos[e]" "federal polic[ies] that [it] dislike[s]." 602 U.S. at 394–95. Diversion of resources in response to a defendant's actions therefore does not, standing alone, establish injury. *Id.* at 395; *see also Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 144 F.4th 296, 314–15 (D.C. Cir. 2025) (standing absent where the only asserted harm is to an organization's *advocacy*). But where government action "directly affect[s] and interfere[s] with" an organization's "core business activities," and the organization "diverted

its resources" to continue pursuing those activities, "such concrete harm to the organization's activities supports standing to sue." *Ctr. for Taxpayer Rts.*, 2026 WL 2635380, at *5 (quoting *All. for Hippocratic Med.*, 602 U.S. at 395) (discussing Havens, 455 U.S. at 379). Based on these criteria – and as demonstrated in CASA, Inc.'s supporting declaration, CASA, Inc. Decl. ¶¶ 14–22, and in Appellees' Br. 26–27 – CASA, Inc. has demonstrated that it has organizational standing in this case.

Just last month, this Court applied *Alliance* to uphold organizational standing in a case involving closely analogous facts and government conduct. In *Center for Taxpayer Rights*, plaintiff groups sued the IRS when it began disclosing thousands of confidential taxpayer records in response to requests from Immigration and Customs Enforcement (ICE) based on a procedure that failed to ensure that ICE's requests complied with statutory requirements. As here, the plaintiffs claimed that the government had unlawfully adopted a new policy – there, one governing disclosure of tax information to ICE – which the government denied, and they sought to stay its implementation. *Ctr. for Taxpayer Rts.,* 2026 WL 2635380, at *1, *3.

The plaintiff organization showed, through its supporting declaration, several ways in which the disclosure procedure had harmed its interests in taxpayer rights, "promoting trust in the tax system," and improving tax system justice. The declaration attested that the disclosure of the "IRS's new policy" had made many immigrant taxpayers "less willing to come to the [organization's] events, to seek its guidance, or to engage with the [organization's] education and outreach." And the group's *pro bono* tax clinic had seen a "drastic" reduction of cases involving taxpayers who lack social security numbers because potential clients "fear . . . having their current status or location shared with [DHS]/ICE." *Id.* at *4.

The district court in *Center for Taxpayer Rights* found that many taxpayers "are no longer willing to engage with the [plaintiff taxpayer-rights group] due to the IRS's" new policy and that the policy "has interfered with the [plaintiff group's] ability to provide its pro bono or nominal fee representation services." *Id.* at *5. The plaintiff group had also established that it is "'divert[ing] and redirect[ing] its limited resources to counteract and offset' the effects of the IRS's policy." *Id.* The plaintiff's supporting declaration attested that the organization had

"increased staffing 'to focus on education and outreach in light of the reduced trust in the tax system engendered by the IRS's policy change' and ha[d] 'reallocated "nearly 10 percent" of the tax clinic's operating expenses to increase client outreach.'" *Id.*

This Court held that these facts "demonstrate[d] [the organization's] likely standing." *Id.* at *5 (citing *Am. Anti-Vivisection Soc'y*, 946 F.3d at 619). Standing existed because the challenged policy "directly affect[ed] and interfere[d] with" the organization's "core business activities" and because the organization "diverted its resources" to continue pursuing those activities, which the Court ruled amounted to a "concrete harm to the organization's activities [that] supports standing to sue." *Id.* (citing *All. for Hippocratic Med.,* 602 U.S. at 395). In other words, direct interference with an organization's "core business activities" and the resulting diversion of resources to continue engaging in those activities (as well as "new activities," not previously part of its "normal annual expenditures," that "became necessary" to respond to the harm, *Ctr. for Taxpayer Rts.,* 2026 WL 2635380, at *4) confer standing, whereas the voluntary diversion of resources to directly combat the defendant's conduct, or the frustration of an abstract

mission, does not. Those principles from *Alliance* – applied by this Court in *Center for Taxpayer Rights* – are the same principles that control here.

The situation that conferred organizational standing in *Center for Taxpayer Rights* closely mirrors this case. Just as the IRS's disclosure policy chilled the immigrant taxpayers the plaintiff served – leaving them "less willing to come to the [organization's] events, to seek its guidance, or to engage with the [organization's] education and outreach," *Ctr. for Taxpayer Rts.*, 2026 WL 2635380, at *4 – Defendants' warrantless-arrest policy has "impaired CASA's core function of connecting community members to social services by chilling" members from sharing information with its staff, because they fear "that their immigrant status will be weaponized against them," producing "a marked decrease in participation in public benefits programs." CASA, Inc. Decl. ¶ 21. And just as the IRS's policy "interfered with the [plaintiff group's] ability to provide its *pro bono* or nominal fee representation services," *Ctr. for Taxpayer Rts.,* 2026 WL 2635380, at *5, Defendants' arrest policy forced CASA, Inc.'s legal team away from "securing long-term status for individuals" and into "providing rapid

legal response and referrals to the families of detained individuals," replacing its immigration-application clinics with "rapid legal response" work, including daily post-arrest guidance. CASA, Inc. Decl. ¶ 18. This Court also rejected the IRS's argument that such chilling depended on the "independent choices of third parties," explaining that an injury may rest on "the predictable effect of Government action on the decisions of third parties." *Ctr. for Taxpayer Rts.,* 2026 WL 2635380, at *5 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)). The same is true here where CASA, Inc.'s members' reluctance to engage with the organization's staff is the predictable effect of a policy of warrantless arrests aimed at the very community CASA, Inc. serves.

As in *Center for Taxpayer Rights,* CASA, Inc. did not manufacture these injuries by voluntarily spending to oppose a policy it dislikes. The plaintiff taxpayer rights organization was compelled to "divert[] and redirect[] its limited resources to counteract and offset" the IRS's policy, reallocating "nearly 10 percent" of its tax clinic's operating expenses to increase client outreach. *Ctr. for Taxpayer Rts.*, 2026 WL 2635380, at *5. CASA, Inc. was likewise forced to reassign its legal and HHS staff to emergency detention response, at the cost of a 50% cut to a county

grant, and to absorb the rising cost of the hotline service that Defendants' arrests caused to be inundated. CASA, Inc. Decl. ¶¶ 17, 19, 20. Because Defendants' warrantless-arrest policy "directly affect[ed] and interfere[d] with" CASA, Inc.'s "core business activities," and CASA, Inc. "diverted its resources" to keep pursuing those activities – and to take on new detention-response work that "became necessary" because of the policy – the same "concrete harm to the organization's activities [that] support[ed] standing to sue" in *Ctr. for Taxpayer Rts.*, 2026 WL 2635380, at *4–5, supports it here.

Thus, the injury that CASA, Inc. has suffered is not the result of the organization simply "spend[ing] its way into standing" by paying to "advocate against the defendant's action" or to "oppos[e]" "federal policy that [it] dislike[s]." *All. for Hippocratic Med.*, 602 U.S. at 394–95. Rather, CASA, Inc.'s injuries stem directly from Defendants' unlawful detention policy which interfered with CASA, Inc.'s "core business activities" – including providing essential legal and social services through which CASA, Inc. stabilizes its members' lives – and which forced CASA, Inc. to divert its resources and efforts away from those services to provide immediate detention-related assistance.

### 2. CASA, Inc.'s Injury Falls Within the "Context" in Which *Alliance for Hippocratic Medicine* Reaffirmed *Havens*.

*Alliance* reaffirmed the principle in *Havens,* 455 U.S. at 379, that an organization suffers a "concrete and demonstrable injury" sufficient to confer standing where a defendant has "perceptibly impaired [its] ability to provide" services to its members – but limited that holding to its "context." *All. for Hippocratic Med.*, 602 U.S. at 395–96. Like the housing organization in *Havens*, CASA, Inc. operates direct-service programs, and Defendants' conduct has obstructed their delivery – like "a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* at 395. Thus, this case sits squarely within the "context" of *Havens.*

Because *Alliance* did not overrule *Havens* but reaffirmed it as a case in which the defendant's conduct directly interfered with an organization's core services, this Court's decisions applying *Havens*' service-impairment principle within that context remain good law. Indeed, since *Alliance*, this Court has continued to apply its two-part test for organizational standing, which derives from *Havens*: whether the challenged action injured the organization's interests, and whether

the organization "used its resources to counteract that harm." *Indep. Mkt. Monitor for PJM v. FERC*, 162 F.4th 1167, 1172 (D.C. Cir. 2025) (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)). Although the Court found no standing in *Indep. Mkt.*, it explained that depriving an organization of what it needs to perform its core functions could support standing under *Havens*, as that would be "not … unlike providing 'false information about apartment availability' to a company whose core business model is offering counseling services to home seekers." *Indep. Mkt.*, 162 F.4th at 1173 (quoting *All. for Hippocratic Med.*, 602 U.S. at 395) (citing *Havens*, 455 U.S. at 379); *see also Indep. Mkt.*, 162 F.4th at 1175–77 (Edwards, J., concurring in the judgment). This Court's earlier decisions in *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016) (proof-of-citizenship requirements impaired the Leagues' voter-registration services), and *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27–29 (D.C. Cir. 1990) (discriminatory advertising impaired fair-housing organizations' counseling services), are likewise examples of *Havens*' context. *See also* Appellees' Br. 27–28.

The purpose of the organization in *Havens* was "equal opportunity housing" which it furthered through activities, such as operating "a housing counseling service" and "investigation and referral of complaints concerning housing discrimination." 455 U.S. at 368. It (and some of its members) sued an apartment complex owner that had allegedly engaged in discriminatory rental practices by steering black applicants away from units that were available to white applicants. *Id.* at 368–69. The organization claimed it had been injured by "the defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services" and that it "had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices." *Id.* at 379. The Supreme Court held that if the defendants' "steering practices [had] perceptibly impaired [the organization's] ability to provide counseling and referral services," the organization had suffered a "concrete and demonstrable injury to [its] activities – with the consequent drain on [its] resources" sufficient to confer standing. *Id.*

The parallels to *Havens* are direct. Like the housing organization there, CASA, Inc. is a direct-service organization: to further its purpose

of creating “a more just society” for “immigrant communities,” it provides “social, health, job training, employment, and legal services” to its members. CASA, Inc. Decl. ¶¶ 7–8. And just as the defendants in *Havens* obstructed the organization’s counseling services at the point of delivery by giving its employees “false information about apartment availability,” *All. for Hippocratic Med.*, 602 U.S. at 395, Defendants’ warrantless-arrest policy has obstructed CASA, Inc.’s services at the point of delivery. Detained members’ families “are not engaging with [CASA, Inc.] about benefits enrollment” while they seek detention assistance, CASA, Inc. Decl. ¶ 16; members fearful “that their immigrant status will be weaponized against them” no longer share the information CASA, Inc.’s staff needs to serve them, *id.* ¶ 21; and CASA, Inc.’s legal team has been pulled from long-term immigration-status work to “locat[e] detained loved ones,” *id.* ¶ 18. *See generally* Appellees’ Br. 26–27. That is the opposite of *Alliance*, where the FDA’s actions had imposed no “similar impediment” on the medical associations’ “advocacy businesses.” 602 U.S. at 395. Here, as in *Havens*, the challenged conduct struck at the organization’s services themselves.

This injury has resulted in a direct drain on CASA, Inc.'s resources. Most directly, CASA, Inc. "faces increased costs due to [Defendants'] unlawful seizures, especially in funding its hotline services." CASA, Inc. Decl. ¶ 19. The arrest surge produced "a forty-fold increase in D.C.-detention calls to the ICE tip hotline," and the bill for CASA, Inc.'s call-answering service rose approximately 14% in the billing period covering the first two weeks of the surge and a further 5% the following month. *Id.* Those are out-of-pocket costs CASA, Inc. never chose to incur: they rose because Defendants' policy drove CASA, Inc.'s members and their families to the hotline. Detention response also now consumes roughly 25% of CASA. Inc.'s HHS team's workload – new unanticipated work that is not fully covered by the team's funds. CASA, Inc. Decl. ¶ 17. And the diversion jeopardized CASA, Inc.'s financial support as illustrated by the 50% cut in a county grant due to delayed deliverables. *Id.* ¶ 20; *see Escobar Molina*, 811 F. Supp. 3d at 23 (recounting the same). Critically, none of this is a voluntary reallocation. The drain is the *consequence* of Defendants' direct interference with CASA, Inc.'s core activities – precisely the "consequent drain on [its] resources" that *Havens* holds sufficient, 455

U.S. at 379 – and which endures after *Alliance for Hippocratic Medicine*, which bars only self-inflicted diversion to advocate against a disfavored policy, 602 U.S. at 394–95.

* * *

In sum, CASA, Inc.'s unrebutted declaration – together with the district court's findings that Defendants' warrantless-arrest policy exists and is unlawful – establishes that the policy has caused a concrete injury to CASA, Inc. on two alternative grounds under *Alliance for Hippocratic Medicine*. *See* 602 U.S. at 395–96. First, Defendants' detention program has directly impaired CASA, Inc.'s "core business activities" of guiding its members to social services and to long-term stability in their legal status. That conduct also caused CASA, Inc. to divert its resources to continue pursuing those activities, and to take on new detention-related assistance that was not previously part of its "normal annual expenditures" and that "became necessary" in response to the illegal arrests, including the increased cost of answering the surge of detention calls to its hotline, causing a drain on CASA, Inc.'s resources. *See Ctr. for Taxpayer Rts.*, 2026 WL 2635380, at *4–5.

Second, CASA, Inc.'s injury arises in the same "context" as *Havens*: Defendants have obstructed a service organization's delivery of its direct-service programs to its members. *All. for Hippocratic Med.*, 602 U.S. at 395–96. That injury is directly traceable to Defendants' policy, and it is redressable because an injunction against the policy would remove the source of the interference. Thus, CASA, Inc. has shown that it has organizational standing under governing Supreme Court and D.C. Circuit precedent.

## CONCLUSION

For the foregoing reasons, CASA, Inc. has shown that it has organizational standing to seek redress against Defendants' unlawful warrantless-arrest program. Amicus therefore urges the Court to affirm the district court's order preliminarily enjoining Defendants from "making warrantless civil immigration arrests in the District of Columbia without a pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained." *Escobar Molina*, 811 F. Supp. 3d at 65.

Should the Court conclude that organizational standing is not established on the current record, amicus respectfully suggests that the Court order a limited remand to develop the standing record rather than vacate the decision below.

Dated: October 14, 2026

Respectfully submitted,

/s/ *Michael D. Bergman*
MICHAEL D. BERGMAN
Counsel for *amicus curiae*
LAWYERS DEFENDING
AMERICAN DEMOCRACY
P.O. BOX 1922
FRAMINGHAM, MA 01701
(301) 908-5035
mdbergman1@gmail.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FED. R. APP. P. 29(a)(5) and 32(a)(7) because it contains 4,006 words, according to the word count feature reported in Microsoft Word, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and Circuit Rule 32(e)(1). This brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook in 14-point font.

Dated: October 14, 2026

*/s/ Michael D. Bergman*
MICHAEL D. BERGMAN
Counsel for *amicus curiae*
Lawyers Defending
American Democracy

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit on October 14, 2026, by using the appellate CM/ECF system. Pursuant to Circuit Rule 25(f), all participants in the case are registered CM/ECF users who will be served by the appellate CM/ECF system. Pursuant to D.C. Circuit Rules, hard copies of this amicus brief will also be timely filed.

Dated: October 14, 2026

*/s/ Michael D. Bergman*
MICHAEL D. BERGMAN
Counsel for *amicus curiae*
LAWYERS DEFENDING
AMERICAN DEMOCRACY